UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHONDOLYN ROCHELLE BLEVINS,<br>Plaintiff,<br>v.<br>CHARLESTON C. IWUAGWU, et al.,<br>Defendants. | Case No. 18-03429 BLF (PR)<br>**ORDER OF DISMISSAL** |

Plaintiff, a federal prisoner, filed the instant *pro se* civil rights action against officials at Federal Correctional Institute in Dublin ("FCI"), where she was formerly incarcerated. After an initial screening, the Court dismissed the complaint with leave to amend to correct several deficiencies. (Docket No. 12.) Plaintiff's amended complaint was again dismissed with leave to file a second amended complaint. (Docket No. 14.) Plaintiff filed a second amended complaint. (Docket No. 18.)

**DISCUSSION**

**A.** **Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Jackson v. Carey*, 535 F.3d 750, 757 (9th Cir. 2003).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Although Plaintiff used a court form complaint for a 42 U.S.C. § 1983 action, she is a federal prisoner, (SAC[1] at 1), and this action challenges the actions of federal employees at FCI-Dublin and not actions under color of state law. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 392–97 (1971) (recognizing a private right of action for damages for constitutional violations by federal employees or their agents). Accordingly, the Court will construe the second amended complaint as a *Bivens* action, and not as a §1983 action, consistent with the Ninth Circuit's liberal construction requirements. *See Jackson*, 353 F.3d at 757; *see also Paige v. Geo Group, Oakland Center*, No. 17-cv-06116-HSG (PR), slip op. at 2 (N.D. Cal. Feb. 27, 2018) (construing section 1983 action as a *Bivens* claim in complaint by pro se prisoner); *Lloyd v. Corrections Corp. of America*, 855 F. Supp. 221, 222 (W.D. Tenn. 1994) (same).

To state a *Bivens* claim, a plaintiff must allege that the defendant violated a federal constitutional right while acting under color of federal law. *See Martin v. Sias*, 88 F.3d

---

[1] This is not Plaintiff's fault since she was provided with the court's form complaint for a § 1983 action.

2

774, 775 (9th Cir. 1996) (citing *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991)). Except for the replacement of a state actor by a federal actor, actions under 42 U.S.C. § 1983 and *Bivens* are identical. *Id.*; *see also Wilson v. Layne*, 526 U. S. 603, 609 (1999) (qualified immunity analysis same under *Bivens* and § 1983). Accordingly, when reviewing a *Bivens* action for which there is no case on point, § 1983 cases may be applied by analogy. *See, e.g.*, *Tekle v. United States*, 511 F.3d 839, 844 (9th Cir. 2007) (applying § 1983 cases to analysis of *Bivens* claim that officers used excessive force under Fourth Amendment, and of qualified immunity defense to same claim).

**B.      Plaintiff's Claims**

Plaintiff names the following as Defendants: Warden Charleston C. Iwuagwu, Associate Warden LeMasters, Associate Warden T. Mischel, Interim Warden R. L. Rhodes, Lt. Davis, the United States, Case Manager Mr. Shaffey, Unit Manager Mrs. Moore, Staff Representative Mr. Miller, and Counselor Killigran. (Docket No. 18 at 2-3.) The allegations include the following:

- Plaintiff claims that in retaliation for filing complaints against another inmate, Jacqueline Gentle, with whom she had ongoing disputes, Defendant LeMaster, among other prison staff, refused to intervene in the matter "with the specific intent to manufacture a reason to transfer me from FCI-Dublin." (Docket No. 18 at 5.)

- Plaintiff claims that on May 29, 2017, after a verbal disagreement in the laundry room, Inmate Gentle attacked her, causing Plaintiff to suffer a contusion to the left side of her face. (*Id.* at 5-6.)

- Plaintiff was issued an incident report for "201 fighting with another person," (*Id.* at 6.) At her request, Plaintiff was assigned a staff representative, Defendant Miller, in preparation of the hearing. (*Id.*) However, Defendant Miller never appeared for the hearing, and a letter he wrote was "allowed to stand in his place." (*Id.*) Plaintiff claims she was denied witnesses and access

3

to surveillance evidence. (*Id.*) Although Inmate Gentle was released back to general population, Plaintiff was transferred to another institution. (*Id.* at 6-7.)

- Plaintiff was granted a re-hearing, during which the incident report was dismissed, and good conduct time restored. (*Id.* at 7.)
- Plaintiff claims that "FCI-Dublin supervisory officials" are enforcing an unconstitutional policy and practice "when they refuse to allow inmates a staff representative based on the allegation that numerous inmates request a staff representative but on the day of their "dHo" hearing they are forced to choose whether to have their hearing continued or sign a refusal." (*Id.* at 8.)
- Plaintiff claims that "FCI-Dublin supervisory officials" are enforcing an unconstitutional policy and practice "when they refuse to upgrade surveillance equipment and install cameras in places such as the laundry rooms where numerous inmates are attacked and/or have fights." (*Id.*)
- Plaintiff claims that "FCI-Dublin supervisory officials" are enforcing an unconstitutional policy and practice "when they allow inmates who display a propensity towards violence to repeatedly return to general population." (*Id.* at 9.)
- Plaintiff claims that the Bureau of Prison's "disciplinary rule 201 fighting with another person" is unconstitutionally vague and fails to adequately inform an inmate what is expected of them. (*Id.*) Plaintiff claims the rule "fails to inform inmates what acts are considered fighting, what steps to take in the event you are attacked, and it fails to inform inmates that there is no self defense." (*Id.*)
- Plaintiff claims ""FCI-Dublin employees knew there was a problem and refused to take action." (*Id.*)

Although Plaintiff identifies the above Defendants under "parties," (Docket No. 18 at 2-3), she does not make specific allegations against all of them in the body of the complaint. Based on the above factual allegations, Plaintiff appears to be attempting to

4

state a claim for retaliation against Defendant LeMasters, a due process claim for procedural deficiencies during the disciplinary hearings against Defendant Miller, supervisory liability against "FCI-Dublin supervisory officials," and a vagueness claim challenging "disciplinary rule 201." The Court addresses the cognizability of each of these claims below.

### 1. **Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Plaintiff claims that Defendant LeMaster took adverse action against her, *i.e.*, refused to intervene in her dispute with another inmate because Plaintiff was filing complaints against that inmate. However, Plaintiff's allegations are insufficient to state a retaliation claim because she does not allege that she was actually chilled from exercising her First Amendment rights. A prisoner must at least allege that she suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Rhodes*, 408 F.3d at 567-68 n.11; *see Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to quit his law library job in the face of repeated threats by defendants to transfer him because of his complaints about the administration of the library); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm).

Plaintiff has already been afforded two opportunities to amend, and this Court has broad discretion to deny leave to amend where Plaintiff has already been granted leave to file an amended complaint. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Accordingly, this

5

retaliation claim is DISMISSED for failure to state a claim.

**2. <u>Due Process</u>**

Plaintiff's allegation that she had a staff representative, Defendant Miller, who did not personally appear on her behalf during the disciplinary hearing appears to be an attempt to allege a violation of her right to due process under the Fifth Amendment.[2]

Plaintiff claims that rather than personally appear at her disciplinary hearing, Defendant Miller wrote a letter that was submitted instead. *See supra* at 3. Even if the Court assumes that this failure to appear was a violation of a procedural protection to which Plaintiff was entitled, Plaintiff also alleges that after several rehearings, the incident report was dismissed, and good conduct time was restored. *Id.* at 4. Violation of procedural due process rights requires only procedural correction and not a reinstatement of the substantive right. *See Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991). If the procedurally protected liberty interest of which the prisoner is deprived during the disciplinary process is restored during the prison administrative appeal process, the prisoner does not have a due process claim. *See Frank v. Schultz*, 808 F.3d 762, 763-64 (9th Cir. 2015) (summary judgment properly granted to defendants on due process claim where prisoner filed a successful administrative appeal which led to the removal of the incident report from his file and the forfeited credits were restored). Here, Plaintiff's allegations clearly indicate that any procedural error was corrected through the administrative appeal process, and she ultimately did not lose any good time credits. Accordingly, this claim should be dismissed for failure to state a claim.

**3. <u>Supervisory Liability</u>**

With respect to supervisory liability, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."

---

[2] The Court will assume this Fifth Amendment claim is a viable claim for damages under *Bivens*. *See Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (private cause of action could be maintained under *Bivens* for violations of fifth amendment Due Process Clause).

6

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (finding under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations). *Bivens* liability requires proof of direct personal responsibility. *See Pellegrino v. United States*, 73 F.3d 934, 936 (9th Cir. 1996). A theory of respondent superior is not applicable in a *Bivens* action. *See id.*; *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). *Bivens* liability may be imposed, however, when a supervisor participated or acquiesced in the alleged constitutional deprivations. *See Jasinski v. Adams*, 781 F.2d 843, 848 (11th Cir. 1986).

Plaintiff claims that "FCI-Dublin supervisory officials" are enforcing various "unconstitutional polic[ies] and practice[s]" with respect to the failure of staff representatives to appear at disciplinary hearings, the upgrading of surveillance equipment, and permitting violent inmates to return to general population. *See supra* at 4. However, Plaintiff fails to identify each supervisory official by name, describe the underlying constitutional deprivation that is at stake, and each individual's personal misconduct that resulted in the deprivation. Her general allegation against "FCI-Dublin supervisory officials" is not sufficient to satisfy the minimum pleading requirements of Rule 8.

Plaintiff has already been afforded two opportunities to amend to attempt to state a cognizable claim, and this Court has broad discretion to deny leave to amend where Plaintiff has already been granted leave to file an amended complaint. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Accordingly, this supervisory liability claim is DISMISSED for failure to state a claim.

4. **Vagueness**

Plaintiff claims that the Bureau of Prison's "disciplinary rule 201 fighting with

7

another person" is unconstitutionally vague and fails to adequately inform an inmate what is expected of them. *See supra* at 4.

Under the "void-for-vagueness" doctrine, due process requires enactments to be written with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). But even if the Court were to assume that a prison regulation can be challenged on vagueness grounds, there is no Supreme Court precedent for permitting a private right of action for damages based on such a claim.

Only on three occasions has the Supreme Court held that, even absent statutory authority, a private right of action for damages may be implied from the Constitution itself for constitutional violations by federal employees or their agents. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 392-97 (1971) (4th Amendment unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (5th Amendment Due Process Clause gender discrimination); *Carlson v. Green*, 446 U.S. 14, 17-19 (1980) (8th Amendment inadequate medical treatment). But "[t]hese three cases -- *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1855 (2017). The Court has made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *id*. at 1857 (citation omitted), and will not be available if there are "'special factors' counseling hesitation in the absence of affirmative action by Congress," *id.* at 1848 (citation omitted).

The determination of whether a *Bivens* damages action should be allowed for a class of conduct represents "a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (declining to recognize a *Bivens* cause of action on theory of retaliation by government officials for

plaintiff's exercise of his property rights).  The Supreme Court articulated a two-part test to determine whether a *Bivens* remedy should be extended.  *Ziglar*, 137 S. Ct. at 1859-60. First, courts must determine whether the case presents a "new context."  *Id.*  If not, then the analysis is over.  *Id.*  If the case does present a new context, however, courts can extend the *Bivens* remedy only if two conditions are met.  *Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018).  One condition is that there is no other adequate, alternative remedy.[3]  *Id.* The other condition is that there are no "special factors" that show that Congress, rather than the courts, should be the one authorizing a suit for money damages.  *Id.*

Here, Plaintiff's vagueness claim is clearly a new context because it is unlike any of the claims presented in *Bivens*, *Davis*, and *Carlson*:  a claim against FBI agents for handcuffing a man in his own home without a warrant (*Bivens*); a claim against a Congressman for firing his female secretary (*Davis*); and a claim against prison officials for failure to treat an inmate's asthma (*Carlson*).  *See Ziglar*, 137 S.Ct. at 1855.

Proceeding to the "special factors analysis," a *Bivens* remedy "will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  *Ziglar*, 137 S.Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18).  The "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weight the costs and benefits of allowing a damages action to proceed."  *Id.* at 1857-58.  If "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III."  *Id.* at 1858.  Other "special factors" include: "the rank of the officer involved; whether *Bivens* is being used as a vehicle to alter an

---

[3] The Ninth Circuit has encompassed the "adequate, alternative remedy" factor as set forth in *Wilkie* into the "special factors" analysis. *Lanuza v. Love*, 899 F.3d 1019, 1031 n.7 (9th Cir. 2018).

9

entity's policy; the burden on the government if such claims are recognized; whether Congress has indicated that it does not wish to provide a remedy; whether there are alternate avenues of relief available; and whether there is adequate deterrence absent a damages remedy, among other factors." *Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) (citing *Ziglar*, 137 S. Ct. at 1357-63).

First of all, Plaintiff already has an adequate, alternative remedy through the prison's administrative grievance procedures. As discussed above, her allegations show that Plaintiff took full advantage of those procedures and received appropriate relief, i.e., dismissal of the rule violation and restoration of good time credits. *See supra* at 5-6. Furthermore, the Court notes that a *Bivens* remedy is intended to discourage illegal acts by individual federal officials acting in his or her individual capacity. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). Plaintiff claims that the rule is promulgated by the Bureau of Prisons, which is a federal agency. *See supra* at 4. Because the purpose of *Bivens* is to deter the individual officer, the *Bivens* remedy does not extend to damages actions against federal agencies, even where individual officers are protected by qualified immunity. *Id.* Accordingly, this vagueness claim must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to state sufficient facts to support any cognizable claim in her second amended complaint. Plaintiff has already been afforded two opportunities to state sufficient facts to support any claims, and has failed to do so. Accordingly, this action is **DISMISSED** for failure to state a claim for which relief can be granted. *See* 28 U.S.C. § 1915A(b)(1),(2).

**IT IS SO ORDERED.**

Dated: _September 26, 2019_

BETH LABSON FREEMAN
United States District Judge

Order of Dismissal
PRO-SE\BLF\CR.18\03429Blevins_dism(ftsac)

10